In The United States District Court

For The District Of Hawaii

| | |
|---|---|
| U.S. Composite Pipe South, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>Frank Coluccio Construction Company, et al.,<br><br>Defendants. | Civil No. CV-12-00538 JMS KSC<br><br>Defendant Frank Coluccio Construction Company's Counterclaim Against U.S. Composite Pipe South, LLC and Additional Counterclaim Defendant Westchester Fire Insurance Company; Summons In A Civil Action |
| Frank Coluccio Construction Company,<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>U.S. Composite Pipe South, LLC,<br><br>Counterclaim Defendant,<br><br>and<br><br>Westchester Fire Insurance Company,<br><br>Additional Counterclaim Defendant. | |

Defendant Frank Coluccio Construction Company's
Counterclaim Against U.S. Composite Pipe South, LLC And Additional
Counterclaim Defendant Westchester Fire Insurance Company

Comes Now Defendant/Counterclaim Plaintiff Frank Coluccio Construction Company by and through their counsel of record, Clay Chapman

Iwamura Pulice & Nervell, and for a Counterclaim against Plaintiff/Counterclaim Defendant U.S. COMPOSITE PIPE SOUTH, LLC ("USCPS") and Additional Counterclaim Defendant WESTCHESTER FIRE INSURANCE COMPANY ("WESTCHESTER FIRE"), alleges as follows:

## I. PARTIES, JURISDICTION AND VENUE

1. Defendant/Counterclaim Plaintiff FRANK COLUCCIO CONSTRUCTION COMPANY ("FCCC") is a Washington State corporation with its principal place of business in the State of Washington.

2. Upon information and belief, Plaintiff/Counterclaim Defendant U.S. COMPOSITE PIPE SOUTH, LLC ("USCPS") is a Louisiana limited liability company, all of whose members are citizens of the States of Texas and California.

3. Upon information and belief, Additional Counterclaim Defendant WESTCHESTER FIRE INSURANCE COMPANY ("WESTCHESTER FIRE") is a New York corporation with its principal place of business in Pennsylvania.

4. This Court has jurisdiction over the parties under 28 U.S.C. § 1332 in that it is a civil action in which the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different states.

5. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## II.   FACTS RELEVANT TO ALL CAUSES OF ACTION

6. FCCC and the City and County of Honolulu (the "City") entered into Beachwalk WWPS to Ala Moana Park Sewer: Phase I - Force Main System Contract No.: CT-DDC-0900444 Job No. W-18-07 dated as of June 23, 2009 (the "Contract").

7. The contract involved installation of five runs of sewer pipe by means of micro-tunneling and jacking of the pipe.

8. In its most basic form, the project involved excavating shafts into which a hydraulic jack and a micro-tunneling boring machine are placed, and creating a water-tight seal for the micro-tunneling boring machine and pipe train to pass through, so the pipe and shaft are not inundated by ground water.

9. The hydraulic jack pushes the micro-tunneling boring machine through the water-tight portal and then retracts. A segment of jacking pipe is placed in the shaft and married up to the micro-tunneling boring machine, and both are pushed forward by the hydraulic jack. The jack then retracts and the next segment of jacking pipe is married up to the first segment, and the pipe and micro-tunneling boring machine are all pushed forward. This process continues until the micro-tunneling

boring machine and the jacking pipe reach their destination, a second shaft which has been excavated at the end of the run.

10. The back of each section of pipe includes a steel coupling bell which goes over the pipe behind it. A water tight seal is created by an o-ring gasket on the trailing pipe.

11. At intervals in the pipe run, segments of pipe into which hydraulic jacks and other equipment have been installed are added to the pipe train, to provide jacking force to complement the main hydraulic jack.

12. These specialized segments of pipe with hydraulic jacking capabilities are known as Intermediate Jacking Stations. They are used in conjunction with a leading section of pipe which does not contain the usual steel coupling bell.

13. On or about July 8, 2011, pursuant to its authority under the Contract, the City, by Written Order No. 1, directed FCCC to procure Meyer Pipe from USCPS for the fifth and final run.

14. The City thereafter unilaterally negotiated the terms and conditions of the purchase directly with USCPS, except for those terms and conditions contained in FCCC's form of Purchase Order.

15. Following the negotiations by the City, and at the direction of the City, FCCC issued Purchase Order No. 29007-00013 dated November 23, 2011, which

- 5 -

included the terms and conditions of the FCCC Purchase Order and the terms negotiated by the City.

16. Paragraph 1 of the FCCC Purchase Order Terms and Conditions provides:

> BY SHIPPING THE GOODS CONTAINED ON THIS ORDER OR BY PERFORMING THE WORK STATED HEREON SELLER AGREES TO ALL TERMS, CONDITIONS AND INSTRUCTIONS HEREON. ANY DIFFERENT OR ADDITIONAL TERMS IN SELLER'S ACCEPTANCE OF THIS ORDER ARE HEREBY OBJECTED TO, AND SHALL NOT BECOME PART OF THE SALES AGREEMENT BETWEEN THE PARTIES UNLESS CONSENTED-TO IN A SIGNED WRITING BY BUYER.

17. The Purchase Order required delivery of 190 sections of Meyer Pipe, Alloy Couplings, 4 Intermediate Jacking Stations, and related items.

18. Paragraph 1.1. of the USCPS General Terms and Conditions provides:

> Shipment to be based upon the attached schedule Exhibit - 1. Seller shall be liable to the Buyer for liquidated damages of $1,000.00 per calendar day for late delivery, and shall further credit Buyer the total amount of said liquidated damages from the purchase price. Such charges shall not exceed 5% of the contract value. These damages are not to be construed as a penalty.

19. Pursuant to Exhibit-1 of Purchase Order No. 29007-00013 dated November 23, 2011, delivery was to be made so as to permit tunneling to begin on or before April 24, 2012.

20. Delivery was not made until July 11, 2012, a delay of 78 days.

21. The Purchase Order provides, at Paragraph 8 of the FCCC terms and conditions:

> Seller warrants that all the goods covered by this order or other description or specification furnished by Buyer or Seller will be in accordance with such order, description or specification and free from defects in material and/or workmanship. All warranties implied by law are a part of this Agreement. All warranties herein shall survive delivery, and shall not be deemed waived either by reason of Buyer's acceptance of said goods or payment for them. Any deviations from this order or specifications furnished hereunder, or any other exceptions or alterations must be expressly approved in writing by Buyer.

22. The Meyer Pipe as delivered did not comport with standards of proper workmanship. Defects in the pipe – sharp protrusions in the pipe – caused damage to the rubber seal at the micro tunneling portal. This damage caused a failure of the seal, and the subsequent flooding of the shaft and pipe train.

23. This flooding caused damage to FCCC's micro tunneling boring machine, and over two months of delay for de-watering and repair operations.

24. The costs and impacts of this flooding to FCCC were no less than $1,657,028.22, including the repair costs to equipment.

25. The Meyer Pipe as delivered also did not comport with industry standards because of the failure to advise or demarcate that only certain pipe was compatible with the Intermediate Jacking Stations provided by USCPS as lead pipe.

26. There were four Intermediate Jacking Stations, but 8 pipes which did not contain the steel coupling bell which could be used as lead pipes. There was no indication of any differences between the 8 pipes with no coupling.

27. As a result, Pipe No. 19, which had been approved by USCPS's on site representative, was used with an Intermediate Jacking Station ("IJS"), and broke during initial coupling on Saturday, September 15, 2012. The broken pipes caused delays as the broken pipe was removed and the situation analyzed to determine the cause.

28. It was only at this time that USCPS informed FCCC that Pipe 19 was too large to be used as a lead pipe to the IJS (a difference in size which, while not discernible to the naked eye, was sufficient to cause the pipe to crack when it was forced into the steel coupling bell.

29. The damages caused by the delays were in an amount not less than $108,736.22.

30. The Meyer Pipe as delivered also did not comport with industry standards because it was fitted with defective gaskets. Certain gaskets split, and others fell completely off the pipe.

31. By e-mail dated September 19, 2012, the City's Project Manager, Aecom, Inc., rejected 33 sections of pipe due to missing or split gaskets.

32. USCPS eventually supplied new gaskets, which FCCC installed, at a cost to FCCC to be determined.

33. USCPS provided Performance and Warranty Bond No. K0790065A, to FCCC, with WESTCHESTER FIRE acting as Surety, to ensure proper performance of USCPS's obligations under the Contract Documents.

### III. CLAIMS FOR RELIEF

FIRST CAUSE OF ACTION
BREACH OF CONTRACT AGAINST USCPS

34. FCCC repeats and incorporates by reference the allegations contained in Paragraphs 1-33 of the Counterclaim as if the same were set forth at length herein.

35. FCCC has performed all of its obligations under the Purchase Order.

36. USCPS has breached the Purchase Order by reason of its failure to timely deliver the Meyer Pipe and by its delivery of Pipe which contained defects and did not comport with standards of proper workmanship.

37. FCCC has suffered damages as a direct and proximate cause of USCPS's breach of contract, including consequential damages from the effect of lost time on a subsequent contract with the City, in an amount to be proved at trial.

38. FCCC is also entitled to $78,000 in liquidated damages.

SECOND CAUSE OF ACTION
CLAIM UNDER SURETY BONDS AGAINST WESTCHESTER FIRE

39. FCCC repeats and incorporates by reference the allegations contained in Paragraphs 1-38 of the Counterclaim as if the same were set forth at length herein.

40. WESTCHESTER FIRE is obligated, pursuant to Performance and Warranty Bond No. K0790065A to remedy the failure of USCPS to properly and timely perform its obligations under the Purchase Order.

41. WESTCHESTER FIRE has failed to fulfill its obligations under Performance and Warranty Bond No. K0790065A, to remedy the breaches of USCPS.

42. As a result of WESTCHESTER FIRE's failure to fulfill its obligations under Performance Bond No. 14054926 and/or Payment Bond No. 14054926, FRANK COLUCCIO CONSTRUCTION COMPANY has suffered damages in an amount to be proved at trial.

WHEREFORE, FRANK COLUCCIO CONSTRUCTION COMPANY prays for the entry of judgment in an amount to be determined at trial, together with interest, costs and

attorneys' fees to the extent permitted by law, along with such other, different and additional relief as the Court may deem just under the circumstances.

DATED: Honolulu, Hawaii; November 16, 2012.

_____
GERALD S. CLAY
SCOTT I. BATTERMAN
Attorneys for Defendants and for
Counterclaim Plaintiff FRANK
COLUCCIO CONSTRUCTION COMPANY